IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHANTE M. CUTCHLOW, )
)
        Plaintiff, )
) CIVIL ACTION
v. )
) No. 17-2628-JWL
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant. )
_____)

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding the Administrative Law Judge's (ALJ) residual functional capacity (RFC) assessment is supported by substantial evidence, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence because he did not include functional limitations resulting from Plaintiff's mental

impairments or from her carpal tunnel syndrome, he failed to fully and fairly develop the record to obtain a medical opinion regarding functional impairments resulting from Plaintiff's degenerative disc disease or degenerative joint disease, he failed to properly assess RFC on a function-by-function basis, and he relied on erroneous factors in evaluating disability.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in

the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues in the order presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II.  Discussion

Much of Plaintiff's claim of error appears to be based on the assumption that any alleged technical error justifies remand for a correction of the technical omission.  An example is Plaintiff's argument that it was error when the ALJ failed to assess functional limitations resulting from impairments he found were not severe within the meaning of the Act and the regulations--carpal tunnel syndrome, depression, and anxiety.  (Pl. Br. 27-28).  Were the court to assume, as Plaintiff suggests, that the ALJ erred in failing to include functional limitations resulting from these impairments in the RFC assessed, Plaintiff has shown no prejudice resulting from that error.  She does not point to record evidence suggesting specific limitations resulting from these impairments which were not adequately expressed in the RFC assessed, and she does not argue that the representative jobs relied upon could not be performed if such limitations were included in the RFC or in the hypothetical questioning of the vocational expert.  And, the court is without

4

jurisdiction in judicial review to reweigh the evidence and substitute its judgment for that of the ALJ. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

### A. Duty to Develop the Record

Plaintiff argues that there are no record medical opinions suggesting functional limitations resulting from her degenerative disc disease or degenerative joint disease and that the ALJ has a duty to fully and fairly developed the record by obtaining a medical opinion in this regard. (Pl. Br. 28). The Commissioner argues both that an ALJ is not required to have a medical opinion upon which to base his RFC assessment, and that in this case the state agency medical consultants provided opinions limiting Plaintiff to light work, and the ALJ tempered those limitations by limiting Plaintiff to a range of sedentary work. (Comm'r Br. 7-8).

The Commissioner is correct. Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

5

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949); Wall, 561 F.3d at 1068-69). The narrative discussion required to be provided in an RFC assessment by SSR 96-8p does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

### B.  Function-by-Function Assessment

Plaintiff argues that because the ALJ stated his finding that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 419.967(a)" (R. 94) (finding no. 6) (bolding omitted), he "failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first." (Pl. Br. 30). The court finds no error. The ALJ provided an RFC assessment as required by 20 C.F.R. §§ 404.1545-1546, 416.945-946. (R. 94-98). That assessment included a narrative discussion within the meaning of SSR 96-8p. West's Soc. Sec. Reporting Serv., Rulings 143-50 (Supp. 2018). It cited specific medical facts and nonmedical evidence, discussed how the plaintiff can perform sustained work activities, and described the

6

maximum amount of each work activity the plaintiff can perform. Id., at 149. It included an explanation how ambiguities and material inconsistencies in the evidence were considered and resolved, and included consideration of the consistency of Plaintiff's allegations of symptoms, and of medical opinions regarding Plaintiff's capabilities. Id. at 149-50. More is not required, and Plaintiff's Brief points to no specific error in the ALJ's discussion.

### C. Erroneous Factors

Plaintiff claims "[t]he ALJ erroneously found Plaintiff was relying only on Ibuprofen to treat her symptoms as inconsistent with her allegations of disability," when "[i]n fact, Plaintiff testified she was taking Lortab and not Ibuprofen." (Pl. Br. 31) (citing R. 96, 119). The portion of the decision to which Plaintiff objects is quoted here:

> As for the claimant's back, an MRI in March 2014 showed only minimal degenerative findings in the lumbar region of the spine (Exhibit B6F/3 [(R. 539)]). The study also identified mild facet arthropathy. The study specifically excluded disk herniation or central spinal or foraminal stenosis. Nonetheless, the claimant described pain rated 6-8/10 and used ibuprofen to treat the pain in early 2014 (Exhibit B8F/31 [(R. 573)]). Physical examination findings at that time was [sic] positive for straight leg raising consistent with radiculopathy in the right lower extremity. Subtle weakness was also noted in the right hip. The claimant demonstrated diminished sensation to light touch in the medial lower leg on the right hand side in comparison to the left (Exhibit B8F/32 [(R. 574)]). While these physical examination findings may support a diagnosis of back disorder, they fail to demonstrate the claimant is disabled by the associated symptoms. Furthermore, the claimant's admitted reliance on ibuprofen to treat her symptoms shows the associated pain is not so severe as to require more intensive therapies. This, too, is inconsistent with disability.

(R. 96). As the ALJ found, the MRI report stated, "There is <u>no evidence</u> of a disk herniation, central spinal or foraminal stenosis." (R. 539) (emphasis added, all caps

7

omitted). Nonetheless, as the ALJ noted, the treatment record on March 20, 2014 revealed that Plaintiff reported pain of 6 to 8 out of 10 and that Plaintiff reported she "primarily used ibuprofen and she has not utilized any other forms of treatment besides that." (R. 573). The ALJ is entitled to rely on treatment records such as this.

As Plaintiff suggests, she testified that she takes Lortab for pain, and that she "cannot take Ibuprofen due to my hiatal hernia." (R. 119). The record reveals that through March 20, 2014 Plaintiff reported that she primarily used Ibuprofen for pain and that she had not utilized any other forms of treatment for her lower back. It reveals that she had only "mild facet arthropathy at L4-5 and L5-S1," and there was no evidence of herniation or stenosis. (R. 539). As the ALJ found, this "is inconsistent with disability." (R. 96). While Plaintiff testified at the hearing on August 25, 2016 that she took Lortab for pain, the ALJ did not question that testimony, but his finding regarding the record in March 2014 is not changed by that testimony. Moreover, Plaintiff's testimony that a hiatal hernia prevents her taking Ibuprofen merely introduces one more inconsistency into the record which supports the ALJ's finding that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." (R. 95).

Plaintiff next objects to the ALJ's explanation that, "Generally, the claimant presented without any signs of acute distress in 2014 through 2016 (Exhibits Bl5F [(R. 623-48)] and B23F [(R. 805-46)], for examples). This factor also weights negatively against the consistency of the claimant's allegations of disability with the medical evidence." (R. 97). She argues, "Descriptions like 'Well-developed, well-nourished white male in no acute distress' are useless, a waste of time, [and] provide no

8

information." (Pl. Br. 31) (quoting from http://www.meddean.luc.edu/lumen/meded/ipm/ipm2/sem3/general_appearance.pdf, p.3). There are at least two problems with this line of reasoning. First, the link provided by Plaintiff produces a three-page document identified only as "Patient Centered Medicine 2," "General Appearance," "Myles Sheehan, S.J., M.D." Although the URL cited leads to a website for the Loyola University of Chicago, Stritch School of Medicine, there is simply nothing here from which the court might deduce the weight to accord this unknown authority. Moreover, reading the document produced by the link cited suggests that it is aimed at medical personnel (perhaps medical students) and is designed neither to support nor to preclude an ALJ's garnering information from medical treatment records.

Here is the entire section from which Plaintiff quotes:

**A. How do you communicate general appearance?**

Presentation of the physical examination, either in writing or verbally, should begin with a pithy description of the patient that makes it clear to all what the person looks like. Descriptions like "Well-developed, well nourished white male in no acute distress" are useless, a waste of time, provide no information, and show a profound lack of imagination on the part of the examiner. Do not feel obliged to use medical language when standard image conveys the picture more clearly.

http://www.meddean.luc.edu/lumen/meded/ipm/ipm2/sem3/general_appearance.pdf (p.3) (last visited, Oct. 17, 2018). While this section suggests that a medical examiner should use his imagination and convey the picture of his patient more clearly, it cannot change the fact that the treatment records here do not show Plaintiff with signs of acute distress, and that fact is not entirely consistent with Plaintiff's allegations.

9

In her argument in this regard, Plaintiff also relies on the Eighth Circuit opinion, "Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. [] 2017), wherein the Eighth Circuit reversed and remanded, finding the ALJ improperly relied on his own interpretation of the medical records." (Pl. Br. 31). However, an Eighth Circuit opinion is not binding precedent in the Tenth Circuit. Moreover, the legal standard applied in Combs is contrary to the law in the Tenth Circuit as noted above. In Combs, the court acknowledged that an ALJ is to determine "a claimant's RFC 'based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" Combs, 878 F.3d at 646 (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, the Combs court went on to state the law in the Eighth Circuit that, "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Combs, 878 F.3d at 646 (quoting Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008); and Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). As noted above, the Tenth Circuit recognizes that an RFC assessment is an administrative assessment rather than a medical assessment, and is well within the province of the ALJ. Howard, 379 F.3d at 949 ("the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record"); McDonald, 492 F. App'x at 885 ("the ALJ's RFC assessment is an administrative, rather than a medical determination"); Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (Because RFC assessment is based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."); see also Chapo, 682 F.3d at 1288 ("[T]here

is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion.") (citing Howard, 379 F.3d at 949); and Wall, 561 F.3d at 1068-69). This court may not follow Combs.

Finally, Plaintiff complains that the ALJ "relied on quite limited activities of daily living as purportedly inconsistent with Plaintiff's allegations of disability," despite that in the Tenth Circuit it has long been established that "the performance of household tasks does not establish that a person is capable of engaging in substantial gainful activity." Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993). Plaintiff is, of course, correct in stating the principal from Thompson. However, daily activities performed by Plaintiff was only one of many inconsistencies upon which the ALJ relied to find Plaintiff's allegations inconsistent with the medical and other evidence of record. The court's review of a consistency determination is deferential, and giving due deference, the court finds no error. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 18, 2018, at Kansas City, Kansas.

        s:/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**